# EXHIBIT A

# EXHIBIT A

RECEIVED
AUG 27 2018
DIVISION OF INSURANCE
STATE OF NEVADA

Electronically Filed
8/22/2018 4:05 PM
Steven D. Grierson
CLERK OF THE COURT

1  **SACOM**
COGBURN LAW OFFICES
2  Jamie S. Cogburn, Esq.
Nevada Bar No. 8409
3  jsc@cogburnlaw.com
Erik W. Fox, Esq.
4  Nevada Bar No. 8804
efox@cogburnlaw.com
5  2580 St. Rose Parkway, Suite330
Henderson, Nevada 89074
6  Telephone: (702) 748-7777
Facsimile: (702) 966-3880
7  *Attorneys for Plaintiff*



RECEIVED
SEP 06 2018
Navigators - Legal Dept.
Stamford, CT

8
**DISTRICT COURT**
9
**CLARK COUNTY, NEVADA**
10

11  O48 REALTY, INC.                  Case No.: A-18-776757-C
Dept. No.: 14
               Plaintiff,
12
       vs.
13
HISCOX INSURANCE COMPANY, INC;
14  and NAVIGATORS INSURANCE          **Arbitration Exemption Requested:**
COMPANY; DOES I through X, inclusive;   Amount Claimed in Excess of $50,000 and
15  and ROE CORPORATIONS I through X,    Declaratory Relief Requested
inclusive,
16
17               Defendants.

18           **PLAINTIFF'S SECOND AMENDED COMPLAINT**

19       Plaintiff, O48 Realty, Inc. (hereinafter "Plaintiff"), by and through its attorneys of record,

20  Jamie S. Cogburn, Esq. and Erik W. Fox, Esq., of Cogburn Law Offices, alleges and complains as

21  follows:

22                        **PARTIES**

23       1.    O48 Realty, Inc. is and was at all times relevant herein, a domestic corporation

24  conducting business in Nevada.

25

                    Page 1 of 9

COGBURN LAW OFFICES
2580 St. Rose Parkway, Suite 330, Henderson, Nevada 89074
Telephone: (702) 748-7777 | Facsimile: (702) 966-3880

2.     HISCOX INSURANCE COMPANY, INC (hereinafter "Hiscox") is a foreign corporation and was at all times relevant herein, issuing policies and conducting business in Nevada.

3.     NAVIGATORS INSURANCE COMPANY (hereinafter "Navigators") is a foreign corporation and was at all times relevant herein, issuing policies and conducting business in Nevada.

4.     The names and capacities, whether individuals, corporate, associate or otherwise of Defendants named herein as DOE and ROE CORPORATION are unknown or not yet confirmed. Upon information and belief, said DOE and ROE CORPORATION Defendants are responsible for damages suffered by Plaintiff and, therefore, Plaintiff sues said Defendants by such fictitious names. Plaintiff will ask leave to amend this Complaint to show the true names and capacities of each DOE and ROE CORPORATION Defendant at such time as the same has been ascertained.

## JURISDICTION AND VENUE

5.     This Court possesses subject matter jurisdiction over this matter because Clark County, Nevada is the judicial district in which a substantial part of the events or omissions giving rise to the claims set forth herein occurred.

## GENERAL ALLEGATIONS

## THE PROFESSIONAL LIABILITY INSURANCE POLICIES

6.     O48 Realty, Inc. is engaged in the business of the brokerage and sale of real property in Clark County, Nevada.

7.     O48 Realty, Inc. entered into an insurance contract with Hiscox for the coverage of activities related to O48 Realty, Inc. real estate business.

8.     The Hiscox policy was effective from August 18, 2014 to August 18, 2015.

9.     A true, correct and authentic copy of the Hiscox policy is attached as **Exhibit 1**.

COGBURN LAW OFFICES
2580 St. Rose Parkway, Suite 330, Henderson, Nevada 89074
Telephone: (702) 748-7777 | Facsimile: (702) 966-3880

COGBURN LAW OFFICES
2580 St. Rose Parkway, Suite 330, Henderson, Nevada 89074
Telephone: (702) 748-7777 | Facsimile: (702) 966-3880

10.   O48 Realty, Inc. also entered into insurance contract with Navigators Insurance for the coverage of activities related to O48 Realty, Inc.'s real estate business.

11.   The Navigator policy was effective from August 18, 2015 to August 18, 2016.

12.   A true, correct and authentic copy of the Navigator policy is attached as **Exhibit 2**.

13.   As such, O48 Realty, Inc. had professional liability insurance policies in effect from August 18, 2014 to August 18, 2016.

## THE HISCOX INSURANCE POLICY DENIAL

14.   A lawsuit was filed against O48 Realty, Inc. by purchasers of a parcel of real property in Clark County, Nevada.

15.   The case, *Scott Carlsen v. Dumitru Ionescu, et al.*, A-15-71672 (hereinafter the "Ionescu Suit"), sued O48 Realty, Inc. among other defendants.

16.   The Ionescu Suit alleged that Scott Carlsen, the Plaintiff in the case, purchased a parcel of real property from the Ionescus.

17.   Carlsen purchased the Ionescu property on November 16, 2014.

18.   After the purchase, Carlsen claimed material defects in the property were not disclosed, including sewage issues, work done on the property without a contracting license and the property's status as a noteworthy haunted house.

19.   O48 Realty, Inc. is alleged to have represented the Ionescus in the sale of the property to Carlsen.

20.   O48 Realty, Inc. tendered its defense to Hiscox as an insured under all policies.

21.   O48 Realty, Inc. also makes a demand for indemnification on Hiscox.

22.   Hiscox denied the tender of defense and demand for indemnification submitted by O48 Realty, Inc., refusing to indemnify or provide defense during the Ionescu Suit.

23.   Hiscox's handling of the claims was unreasonable, oppressive and malicious, and violated Nevada law governing fair claims practices and warrants an award of punitive damages.

COGBURN LAW OFFICES
2580 St. Rose Parkway, Suite 330, Henderson, Nevada 89074
Telephone: (702) 748-7777 | Facsimile: (702) 966-3880

24.     The impact of the failure by Hiscox to defend and/or indemnify O48 Realty, Inc. related to the Ionescu Suit was unconscionable.

25.     The financial impact of denying coverage, where coverage exists, on O48 Realty was substantial.

26.     Hiscox's improper denial of coverage where it knew and appreciated the type of company O48 Realty, Inc. is, was in bad faith.

## THE NAVIGATORS DENIAL

27.     O48 Realty, Inc. also tendered its defense to Navigators as an insured under all policies.

28.     O48 Realty, Inc. also makes a demand for indemnification on Navigators.

29.     Navigators denied the tender of defense and demand for indemnification submitted by O48 Realty, Inc., refusing to indemnify or provide defense during the Ionescu Suit.

30.     Navigators handling of the claims was unreasonable, oppressive and malicious, and violated Nevada law governing fair claims practices and warrants an award of punitive damages.

31.     The impact of the failure by Navigators to defend and/or indemnify O48 Realty, Inc. related to the Ionescu Suit was unconscionable.

32.     Through its agents, Navigators understood and appreciated that O48 Realty, Inc. were profitable, is small company.

33.     Navigator's handling of the claims was unreasonable, oppressive and malicious, and violated Nevada law governing fair claims practices and warrants an award of punitive damages.

## FIRST CLAIM FOR RELIEF

### (Breach of Contract – against all Defendants)

34.     O48 Realty, Inc. realleges and incorporates by reference the prior paragraphs of this Complaint as though fully set forth herein.

Page 4 of 9

35. O48 Realty, Inc. entered into insurance contracts with Hiscox and Navigators by virtue of the policies issued which name O48 Realty, Inc. as an insured.

36. Hiscox and Navigators breached the policy when they denied O48 Realty, Inc.'s tender of defense and request for indemnification.

37. As a direct and proximate cause of the Defendant's breach, O48 Realty, Inc. has been damaged in an amount in excess of $15,000.

38. O48 Realty, Inc. has been required to obtain the services of Cogburn Law Offices to prosecute this claim, and is entitled to recover reasonable attorney fees and other costs incurred in this litigation, in addition to any other relief to which it may be entitled.

## SECOND CLAIM FOR RELIEF

### (Tortious Breach of Implied Covenant of Good Faith and Fair Dealing – against all Defendants)

39. O48 Realty, Inc. realleges and incorporates by reference the prior paragraphs of this Complaint as though fully set forth herein.

40. A covenant of good faith and fair dealing is implied into every contract constructed pursuant to Nevada law, including the policies mentioned hereinabove.

41. Hiscox and Navigators breached the implied covenant of good faith and fair dealing in various ways, including but not limited to denying O48 Realty, Inc.'s claim, not funding O48 Realty, Inc.'s defense and as such, performed in a manner unfaithful to the terms of the policies.

42. As a direct and proximate cause of the Hiscox and Navigators breaches, O48 Realty, Inc. has been damaged in an amount in excess of $15,000.

43. By its actions, Hiscox and Navigators are guilty of oppression, fraud and/or malice, expressed or implied.

44. Accordingly, in addition to compensatory damages, O48 Realty, Inc. may recover punitive damages for the sage of example and by way of punishing Hiscox and Navigators.

COGBURN LAW OFFICES
2580 St. Rose Parkway, Suite 330, Henderson, Nevada 89074
Telephone: (702) 748-7777 | Facsimile: (702) 966-3880

45.   O48 Realty, Inc. has been required to obtain the services of Cogburn Law Offices to prosecute this claim, and is entitled to recover reasonable attorney fees and other costs incurred in this litigation as special damages, in addition to any other relief to which it may be entitled.

### THIRD CLAIM FOR RELIEF

#### (Violations of NRS 686A.310—against all Defendants)

46.   O48 Realty, Inc. realleges and incorporates by reference the prior paragraphs of this Complaint as though fully set forth herein.

47.   At all times relevant and material hereto, NRS 686A.310 was in full force and effect.

48.   Hiscox and Navigators violated NRS 686A.310 in various ways, including, by not limited to:

a.   Failing to acknowledge and at reasonably and promptly upon communications with respect to claims arising under insurance policies;

b.   Failing to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under insurance policies;

c.   Failing to affirm or deny coverage of claims within a reasonable time after proof of loss requirements have been completed and submitted by the insured;

d.   Failing to effectuate prompt, fair and equitable settlements of claims in which liability of the insurer has becomes reasonably clear;

e.   Compelling insured to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insured, when the insured have made claims for amounts reasonably similar to the amounts ultimately recovered;

COGBURN LAW OFFICES
2580 St. Rose Parkway, Suite 330, Henderson, Nevada 89074
Telephone: (702) 748-7777 | Facsimile: (702) 966-3880

COGBURN LAW OFFICES
2580 St. Rose Parkway, Suite 330, Henderson, Nevada 89074
Telephone: (702) 748-7777 | Facsimile: (702) 966-3880

f.  Failing to settle claims promptly, where liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage; and/or

g.  Failing to provide promptly to an insured a reasonable explanation of the basis in the insurance policy, with respect to the facts of the insured's claim and the applicable law, for the denial of this claim or for an offer to settle or compromise this claim.

h.  Unreasonably withdrawing defense and coverage of claims.

49.  As a direct and proximate cause of Hiscox and Navigtor's breaches, O48 Realty, Inc. has been damaged in an amount in excess of $15,000.00.

50.  By their actions, Hiscox is guilty of oppression, fraud and/or malice, express or implied.

51.  Accordingly, in addition to compensatory damages, O48 Realty, Inc. may recover punitive damages for the sake of example and by way of punishing Hiscox.

52.  O48 Realty, Inc. has been required to obtain the services of Cogburn Law Offices to prosecute this claim, and is entitled to recover reasonable attorney fees and other costs incurred in this litigation as special damages, in addition to any other relief to which it may be entitled.

## FOURTH CLAIM FOR RELIEF

### (Declaratory Relief – against all Defendants)

53.  Plaintiff repeats and realleges the paragraphs as though fully stated herein.

54.  O48 Realty, Inc. realleges and incorporates by reference the prior paragraphs of this Complaint as though fully set forth herein.

55.  There exists between O48 Realty, Inc. and Hiscox and Navigators a justiciable controversy regarding the rights and obligations of the parties under the respective policies,

1 | specifically, but not limited to, whether Hiscox and/or Navigators should have defended and

2 | indemnified O48 Realty in the Ionescu Suit.

3 |      56.    O48 Realty, Inc. seeks a declaratory judgment to resolve this controversy,

4 |      57.    This action presents a justiciable controversy related to the obligations, right and

5 | limitations to the parties under the respective policies.

6 |      58.    O48 Realty, Inc. and Hiscox and Navigators have adverse interests in this matter,

7 |      59.    O48 Realty, Inc. asserts a legally protectable interest that is ripe for determination.

8 |      60.    O48 Realty, Inc. has been required to obtain the services of Cogburn Law Offices

9 | to prosecute this claim, and is entitled to recover reasonable attorney fees and other costs incurred

10 | in this litigation as special damages, in addition to any other relief to which it may be entitled.

11 | ...

12 | ...

13 | ...

14 | ...

15 | ...

16 | ...

17 | ...

18 | ...

19 | ...

20 | ...

21 | ...

22 | ...

23 | ...

24 | ...

25 | ...

COGBURN LAW OFFICES
2580 St. Rose Parkway, Suite 330, Henderson, Nevada 89074
Telephone: (702) 748-7777 | Facsimile: (702) 966-3880

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief against Defendants:

1.    For general damages in excess of $15,000 for each claim for relief;

2.    For special damages determined at the time of trial;

3.    For punitive damages;

4.    For judicial declaration as to the rights, obligations, and liabilities of the parties to the respective policies of insurance;

5.    For an award of reasonable attorney fees and costs of suit incurred herein; and

6.    For such other and further relief as the Court may deem just and proper.

Dated this 22nd day of August, 2018.

COGBURN LAW OFFICES

By: _____/s/ Erik W. Fox_____
Jamie S. Cogburn, Esq.
Nevada Bar No. 8409
Erik W. Fox, Esq.
Nevada Bar No. 8804
2580 St. Rose Parkway, Suite 330
Henderson, Nevada 89074
*Attorneys for Plaintiff*

COGBURN LAW OFFICES
2580 St. Rose Parkway, Suite 330, Henderson, Nevada 89074
Telephone: (702) 748-7777 | Facsimile: (702) 966-3880

EXHIBIT 1

EXHIBIT 1



All Risks, Ltd.
11811 N. Tatum Blvd. Ste. 4010
PHOENIX, AZ  85028
TODD BALLOT
Phone: 1(602)494-7200  Ext:3930
Fax: 1(602)324-2306
S/Q: 2943802/001

# Insurance Proposal

August 12, 2014

Mickal Mireles
LEGACY INSURANCE GROUP  #270327
5510 S FT APACHE STE 4
LAS VEGAS, NV  89148

Insured:        048 Realty Inc
                5265 S Durango Dr
                Suite D
                Las Vegas, NV  89113

Policy Period:  08/18/2014 - 08/18/2015 (per carrier quote attached)

We are pleased to submit our proposal for the above captioned insured.
Please read the attached quote carefully as coverage offered may be more
limited than coverage requested.

                              E & O

Price Breakout:
Premium:                      6,995.00
Administration Fee:              75.00
Policy Fee:                     225.00
NV Surplus Lines Tax:           255.33
NV Stamp Fee:                    29.18
Total:                        7,579.51

Agency Commission:  12.50%

Net Due:                      6,705.13

Remarks:
Please see attached carrier quote for all terms and conditions.  If you
have any questions, please contact our office.

Note:
Minimum earned premium most likely will apply to this policy.
See attached carrier quote for specifics. Please note that all fees are
fully earned at inception.

Continued...

Arizona · California · DC Metro · Florida · Georgia · Maryland · North Carolina
Pennsylvania · Texas · Virginia · Washington
CA License 0B84526

 allrisks

All Risks, Ltd.
11811 N. Tatum Blvd. Ste. 4010
PHOENIX, AZ  85028
TODD BALLOT
Phone: 1(602)494-7200  Ext:3930
Fax: 1(602)324-2306
S/Q: 2943802/001

## Insurance Proposal

Please review any minimum and deposit, audit, and/or cancellation
provisions on the attached carrier quote for details regarding possible
return premiums and additional premium charges.

---

Carrier:   LLOYDS OF LONDON

I look forward to hearing from you and please call if you have any questions.

Thank you for your business.

TODD BALLOT

All Risks, Ltd.



Arizona · California · DC Metro · Florida · Georgia · Maryland · North Carolina
Pennsylvania · Texas · Virginia · Washington
CA License 0B84526

Page 2



## Professional Liability Errors and Omissions Insurance
Policy Form

**About this Policy**

This is a Claims made and Reported Policy in which Claim Expenses are included within the Limit of Liability unless otherwise noted. Please read the entire policy carefully and consult with your insurance broker or advisor. Those words (other than the words in the captions) which are printed in Boldface are defined in the Policy.

In consideration for the payment of premium and in reliance on the statements made and information provided to Underwriters, including but not limited to the statements made and information provided in and with the **Application** which is made a part of this Policy, as well as subject to the Limits of Liability, the Deductible and all of the terms, conditions, limitations and exclusions of this Policy, Underwriters and the **Insured** agree as follows:

**I. Insuring Agreement**

Underwriters will pay on behalf of the **Insured** all **Damages** and **Claim Expenses** in excess of the Deductible and subject to the applicable Limit of Liability that the **Insured** becomes legally obligated to pay as a result of any covered **Claim** that is first made against the **Insured** and reported in writing to Underwriters during the **Policy Period** or during any properly exercised and applicable **Extended Reporting Period**, for any **Wrongful Act** by the **Insured** or by anyone for whom the **Insured** is legally responsible, provided, however, that such **Wrongful Act** was committed or allegedly committed on or after the **Retroactive Date** set forth in Item 8. of the Declarations and further provided that the **Insured** had no knowledge of the actual or alleged **Wrongful Act** prior to the inception date of this Policy.

**II. Defense and Settlement**

A. Underwriters shall have the right and the duty to defend any covered **Claim**, including but not limited to the appointment of legal counsel, subject to the Limits of Liability, the Deductible and all applicable terms and conditions of this Policy, even if such **Claim** is groundless, false, or fraudulent.

B. Not withstanding Section II.A. above, the **Insured** may request in writing the right to appoint defense counsel to defend any covered **Claim**, but only with the prior written consent of Underwriters, who shall have the sole discretion to consent to such an appointment. The appointment by the **Insured** of defense counsel pursuant to this provision shall not waive or alter the rights of Underwriters with respect to review and determination as to the reasonableness of any **Claim Expenses** presented for payment.

C. Underwriters shall have the right to investigate and to solicit settlement demands or proposals as to any covered **Claim** as Underwriters deem reasonable and the **Insured** shall, as a condition to any coverage under this Policy, have the duty to cooperate with Underwriters in such investigation and in the solicitation of settlement demands or proposals including, but not limited to:

   1. upon request, submit to examination and interrogation under oath by Underwriters' representative;

   2. attend hearings, depositions and trials as requested by Underwriters;

   3. assist in securing and giving evidence and obtaining the attendance of witnesses;

   4. provide written statements to Underwriters' representative and meet with such representative for the purpose of investigation and/or defense, all without charge to Underwriters.

D. Underwriters shall not settle any **Claim** without the consent of the **Insured**, which consent the **Insured** will not unreasonably withhold.

E. If the **Insured** shall refuse to consent to any settlement recommended by Underwriters and shall elect to contest the **Claim** or continue any legal proceedings in connection with such **Claim**, then Underwriters' liability for the **Claim** shall not exceed the amount for which the



HISCOX

## Professional Liability Errors and Omissions Insurance
Policy Form

Claim could have been so settled plus **Claim Expenses** incurred up to the date of such refusal.  Such amounts are subject to the Limits of Liability set forth in Sections VI.A. and B. of this Policy and Item 4. of the Declarations.

F.   Underwriters shall not be obligated to settle any **Claim**, pay any **Damages** or **Claim Expenses**, or continue to defend any **Claim** after the applicable Limit of Liability has been exhausted.

**III. Definitions**

A.   **Application** means the signed application for the Policy including any attachments and other materials submitted in conjunction with the signed **Application**. The **Application** shall be maintained by Underwriters and shall be deemed a part of this Policy as if physically attached.  If this Policy is a renewal or replacement of a previous policy or policies issued by Underwriters, all signed applications and other materials that were attached to and became a part of these previous policies shall be considered as part of the **Application** for this Policy.

B.   **Affiliate** means any person or entity, which is related to any **Insured** through common ownership, control or management. **Affiliate** shall not include **Subsidiary**.

C.   **Bodily Injury** means physical injury to or sickness, disease or death of a person, or mental injury, mental anguish, emotional distress, pain or suffering, or shock sustained by a person, as a result of **Bodily Injury**.

D.   **Claim** means any notice received by the **Insured** of a demand for **Damages** or for non-monetary relief based on any actual or alleged **Wrongful Act**, whether or not the nature or extent of the **Damages** or non-monetary relief is known or asserted at the time of receipt of any notice.

E.   **Claim Expenses** means:

1.   all reasonable and necessary fees, costs and expenses, including the fees of attorneys and experts, incurred by or on behalf of Underwriters in the investigation, defense, appeal, and settlement of a **Claim**;

2.   all other reasonable and necessary fees, costs, and expenses incurred by the **Insured** with the written approval of Underwriters; and

3.   premiums on appeal bonds, attachment bonds or similar bonds; however, Underwriters shall have no obligation to apply for or furnish any such bonds.

F.   **Claim Expenses** shall not include and no coverage shall be afforded for:

1.   salaries, wages or expenses of **Individual Insureds**,; or

2.   the loss of earnings of the **Named Insured** or any **Individual Insured** except to the extent such constitutes Supplemental Payments pursuant to Section IV.C. of this Policy; or

3.   the defense of any criminal investigation, criminal grand jury proceeding, or criminal action.

G.   1.   **Damages** means a monetary judgment or award the **Insured** is legally obligated to pay for any covered **Claim** (including pre- or post-judgment interest) or a settlement negotiated by Underwriters with the consent of the **Insured**.

2.   **Damages** does not include any of the following:

a.   fines, penalties, taxes, sanctions, or that portion of any multiplied damages award which exceeds the damage award so multiplied;

b.   any punitive or exemplary damages provided, however, that, if such damages are otherwise insurable under applicable law and regulation,



## Professional Liability Errors and Omissions Insurance
### Policy Form

Underwriters will pay an award of punitive or exemplary damages made against the **Insured** for or based upon a **Wrongful Act** in the performance of **Professional Services**, in excess of the Deductible and up to a maximum sum of $ 250,000. The enforceability of this section shall be governed by such applicable law that most favors coverage for punitive damages. This limit shall be a part of and not in addition to the Limits of Liability set forth in items 4.A. and B. of the Declarations.;

   c.  the return or restitution of fees, commissions, profits, or charges for goods provided or services rendered; or

   d.  any amounts deemed uninsurable by the law pursuant to which this Policy is construed.

H.  **Extended Reporting Period** means that period described in **Section VII.** of the Policy.

I.  **Individual Insured** means:

   1.  any past, present or future partner, director, officer, member, board member, or employee of the **Named Insured**, but only for acts within the scope of their duties for the **Named Insured**;

   2.  any independent contractor of the **Named Insured**, but only for **Professional Services** performed on behalf of and at the direction of the **Named Insured**.

J.  **Insured** means:

   1.  the **Individual Insureds**;

   2.  the **Named Insured**;

   3.  any **Subsidiary** of the **Named Insured**;

   4.  a **Joint Venture** in which the **Named Insured** participates as a joint venturer pursuant to a written joint venture agreement, but only with respect to the liability imposed on the **Named Insured** for its participation in such **Joint Venture** and only with respect to **Wrongful Acts** committed or allegedly committed by the **Named Insured**. This definition does not extend coverage and no coverage will be provided for **Damages** or **Claim Expenses** to the **Joint Venture** itself or any other entity or individual that is part of the **Joint Venture**.

K.  **Joint Venture** means a business endeavor, confirmed in a written agreement, between the **Named Insured** and one or more entities or individuals in which the **Named Insured's** participation is the performance of **Professional Services**.

L.  **Named Insured** means the individual, corporation, partnership, limited liability company, limited partnership, or other entity named in Item 1. of the Declarations.

M.  **Personal Injury** means injury, other than **Bodily Injury**, arising out of one or more of the following offenses:

   1.  False arrest, detention or imprisonment;

   2.  Malicious prosecution;

   3.  The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of premises that a person occupies, committed by or on behalf of its owner, landlord, or lessor;

   4.  Oral or written publication of material that slanders, libels, or defames a person or organization, or disparages the goods, products or services of a person or organization; or

   5.  Oral or written publication or material that violates a person's right of privacy.

N.  **Policy Period** means the period of time specified in Item 7. of the Declarations.

Hiscox Inc.

© 2009 Hiscox Inc

MPL P001 CW (06/09)



## Professional Liability Errors and Omissions Insurance
### Policy Form

O.   **Pollutants** means any solid, liquid, gaseous, or thermal irritant, contaminant or toxin, including but not limited to smoke, vapor, soot, fumes, acids, alkalis, chemicals, metals, silica, lead, lead compounds or materials containing lead, radon, asbestos, electromagnetic radiation, or waste of any like substances. In addition to pollutants to be disposed of, waste also includes materials to be recycled, reconditioned, or reclaimed.

P.   **Professional Services** means only those services specified in Item 3. of the Declarations, as performed by or on behalf of the **Named Insured** for others for a fee or other compensation.

Q.   **Property Damage** means physical loss of or physical damage to or destruction of any property including the loss of use thereof.

R.   **Subsidiary** means any entity identified in the **Application** of which the **Named Insured** owns on or before the **Policy Period** more than 50% of the issued and outstanding voting securities, either directly or indirectly through one or more of its **Subsidiaries**.

S.   **Retroactive Date** means the date specified in Item 8. of the Declarations.

T.   **Wrongful Act** means any actual or alleged breach of duty, negligent act, error, omission, or **Personal Injury** committed solely in the performance of the **Professional Services** of the **Insured**.

**IV.  Extensions of Coverage**   A.   **Estates, Heirs, and Legal Representatives**

In the event of the death or incapacity of an **Individual Insured**, or the bankruptcy of an **Insured**, any **Claim** made against any of the heirs, executors, administrator, trustees in bankruptcy, assignees, and legal representatives of any **Insured**, based upon actual or alleged **Wrongful Acts** of such **Insured**, shall be deemed to be a **Claim** against such **Insured** for the purposes of this Policy.

B.   **Spousal Liability**

If a **Claim** is asserted against the lawful spouse of any **Individual Insured** solely as a result of:

1.   the status of the spouse as spouse of any **Individual Insured**; or

2.   the ownership interest of the spouse in property which the claimant seeks as recovery for actual or alleged **Wrongful Acts** of any **Individual Insured**;

Then, such **Claim** shall be deemed a **Claim** against the **Individual Insured** for the purpose of this Policy; provided, however, that subject to all of the terms, conditions, limitations, restrictions and exclusions of this Policy, coverage shall only apply to **Claims** for actual or alleged **Wrongful Acts** of the **Insured** and no coverage will be provided for any **Claim** for any actual or alleged **Wrongful Acts** of the spouse.

C.   **Supplemental Payments**

Underwriters will pay the reasonable expenses incurred by the **Insured**, including loss of wages, if the **Insured** is required by Underwriters to attend arbitration proceedings or trial in the defense of a covered **Claim**. Such payments made by Underwriters are subject to the following:

1.   The maximum reimbursement for such expenses shall not exceed $250 per day for each **Insured** who attends such proceedings at Underwriters' request.

2.   Underwriters' maximum total liability for such reimbursement shall not exceed $5,000 per **Claim** regardless of the number of **Insureds** who attend such proceedings at Underwriters' request.



## Professional Liability Errors and Omissions Insurance
Policy Form

3.  Such payments shall be part of and shall reduce the available Limit of Liability.

4.  The Deductible amount applicable to each **Claim** including **Claim Expenses** shall not apply to the payments made by Underwriters pursuant to this provision of this Policy.

**V. Exclusions**

This Policy does not apply to and Underwriters shall have no obligation to pay any **Damages, Claim Expenses,** or **Supplemental Payments** for any **Claim:**

A.  alleging fraud, dishonesty, criminal conduct, or any knowingly wrongful, malicious, or deliberate acts or omissions, provided, however, that Underwriters will pay **Claim Expenses** in the defense of **Claims,** alleging such conduct in relation to the performance by the **Insured** of **Professional Services** unless and until there is a final adjudication establishing that the **Insured** committed such conduct and further provided that:

1.  notwithstanding the above, Underwriters shall have no obligation to provide a defense or pay **Claim Expenses** for or relating to any criminal investigation, grand jury proceeding, or criminal action; and

2.  this exclusion shall not apply to any **Individual Insured** who did not commit or participate in such fraudulent, dishonest, criminal, or knowingly wrongful, malicious, or deliberate acts or omissions.

B.  based upon, arising out of or attributable to the gaining of any profit or advantage to which the **Insured** was not legally entitled;

C.  alleging discrimination of any type or nature, including, but not limited to any violations of federal, state, or local law or ordinance, as to any past, present, or future employee of the **Insured,** or any applicant for employment with or potential employee of the **Insured;**

D.  any **Claim** alleging a **Wrongful Act:**

1.  committed or allegedly committed prior to the **Retroactive Date;** or

2.  which has been the subject of any notice given under any other policy prior to the beginning of the **Policy Period** and of which this Policy is a renewal or replacement; or

3.  as to which the **Insured** had knowledge prior to the **Policy Period** and the **Insured** had a reasonable basis to believe that such **Wrongful Act** could give rise to a **Claim;** provided, however, that, if this Policy is a renewal or replacement of a previous policy issued by Underwriters providing materially identical coverage, the **Policy Period** referred to in this Section V.D.3 will be deemed to refer to the inception date of the first such policy issued by Underwriters;

E.  brought by one **Insured** against another **Insured,** or brought by any **Affiliate** or by any **Joint Venture** in which the **Insured** participates, as against any **Insured;**

F.  for any actual or alleged violation of the responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974, or amendments thereto or similar provisions of any federal, state or local statutory law or common law;

G.  based upon or arising out of any violation of the Securities Act of 1933 as amended; the Securities Exchange Act of 1934 as amended; any state blue sky or securities laws or amendments thereto; any similar state or federal laws or amendments thereto; or any regulation issued pursuant to any of the foregoing statutes;

H.  based upon or arising out of any actual or alleged violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq., and any amendments thereto, or any rules or regulations promulgated thereunder;

I.  based upon or arising out of bodily injury, sickness, disease, or death of any employee of the **Insured** arising out of and in the course of employment by the **Insured;** or any obligation for



## Professional Liability Errors and Omissions Insurance
### Policy Form

which the **Insured** or any insurer may be liable under any Workers' Compensation, Unemployment Compensation, Employers Liability, or Disability Benefit Law, or any similar law, regulation, or ordinance, or the failure of the **Insured** to comply with any such statutes or any obligations thereunder;

J.   based upon or arising out of the liability of others that is assumed by any **Insured** under any contract or agreement unless such liability would have attached to the **Insured** even in the absence of such contract or agreement;

K.   based upon, arising out of, or attributable to **Bodily Injury** or **Property Damage**;

L.   which would not have occurred in whole or in part but for the actual, alleged or threatened existence, discharge, dispersal, seepage, migration, release or escape of **Pollutants** at any time, including, but not limited to any loss, cost or expense arising out of any:

   1.   Request, demand or order that any **Insured** or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the existence, non-existence or effects of **Pollutants**; or

   2.   **Claim** by or on behalf of a governmental authority or others for **Damages** because of testing for, identifying, detecting, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, communicating information about, responding to, or assessing the existence, non-existence or effects of **Pollutants**; including the failure to perform any of these activities;

M.   based upon, arising out of or attributable to the actual or alleged infringement of any copyright, trademark, trade dress, trade name, service mark, service name, title, slogan or patent;

N.   with respect to any **Subsidiary**, for, based upon, arising out of, or attributable to, either directly or indirectly:

   1.   any **Wrongful Act** committed or allegedly committed before the date it became a **Subsidiary**;

   2.   any **Wrongful Act** committed or allegedly committed after the date it ceased to be a **Subsidiary**;

O.   any **Claim** based upon or arising out of any breach of express warranties, guarantees, or contracts, including, but not limited to any agreements to refund, repurchase, or indemnify any person or entity;

P.   any actual or alleged violation of any federal, state, or local statutes, ordinances, or regulations regarding or relating to unsolicited telemarketing, solicitations, emails, faxes, or any other communications of any type or nature, including but not limited to any anti-spam and do-not-call statutes, ordinances, or regulations;

Q.   the failure to procure or maintain adequate insurance or bonds.

**VI.  Limits of Liability and Deductible**

A.   The Limit of Liability shown in Item 4.A. of the Declarations as applicable to "Each Claim" is the maximum amount that Underwriters are or can be liable for **Damages**, **Claim Expenses** and Supplemental Payments for each covered **Claim** first made against the **Insured** and reported to Underwriters during the **Policy Period** or Extended Reporting Period, if applicable, regardless of when such payments are made.

B.   The amount shown in Item 4.B of the Declarations applicable to "Aggregate for all Claims" is subject to Section VI.A. above regarding "**Each Claim**", and is the maximum amount that Underwriters are or can be liable to pay for all **Damages**, **Claim Expenses** and Supplemental Payments for all **Claims** first made against the **Insureds** and reported to



HISCOX

## Professional Liability Errors and Omissions Insurance
Policy Form

Underwriters during the **Policy Period** or **Extended Reporting Period**, if applicable, regardless of when such payments are made.

C. All **Claims** based upon or arising out of any and all continuous, repeated or related **Wrongful Acts** committed or allegedly committed by one or more of the **Insureds** shall be considered a single **Claim** first made against the **Insured** on the date when the first of such **Claims** was first made against and received by the **Insured**, or when notice of such continuous, repeated or related **Wrongful Acts** was first reported to the applicable insurer. If the **Claims** are deemed to have been first made against the **Insured** during this Policy, such will be deemed to be a single **Claim** for all purposes, including but not limited to, the applicability of one Deductible and the Limit of Liability per **Claim** as set forth in Section VI.A. above and in Item 4.A. of the Declarations.

**VII. Extended Reporting Period**

A. If Underwriters or the **Named Insured** cancels or nonrenews this Policy, then the **Named Insured** shall have the right, upon payment of the applicable additional premium based on the percentage of the expiring premium specified in Item 12.B. of the Declarations, to an extension of the coverage granted by this Policy during the period set forth in Item 12.A of the Declarations, which period shall be referred to as the **Extended Reporting Period**. This **Extended Reporting Period** will apply only to **Claims** first made against the **Insured** during the **Extended Reporting Period** for or based upon **Wrongful Acts** committed or allegedly committed prior to such effective date of cancellation or nonrenewal and otherwise covered by this Policy. The right to purchase the **Extended Reporting Period** shall not apply if this Policy is canceled by Underwriters for nonpayment of premium.

B. As a condition precedent to the right to purchase the **Extended Reporting Period** the total premium for this Policy must have been paid. The right to purchase the **Extended Reporting Period** shall lapse unless a written notice of the election of the **Extended Reporting Period**, together with full payment of the additional premium for the **Extended Reporting Period**, is received by Underwriters within 30 days after the effective date of cancellation or the expiration date of this Policy. In the event such written notice of election and the payment of the additional premium are not received by Underwriters within such 30-day period, there shall be no right to purchase the **Extended Reporting Period** at a later date.

C. If the **Extended Reporting Period** is purchased, the entire premium shall be deemed earned at its commencement without any obligation by Underwriters to later return any portion thereof.

D. The Limits of Liability available during the **Extended Reporting Period** shall be the remaining available Limits of Liability under this canceled or nonrenewed Policy. There shall be no separate or additional Limit of Liability available for the **Extended Reporting Period** and the purchase of the **Extended Reporting Period** shall in no way increase the Limit of Liability set forth in Item 4. of the Declarations.

**VIII. Conditions**

A. Reporting of Claims

1. In the event a **Claim** is first made against any **Insured**, the **Insured**, as a condition precedent to any right to coverage under this Policy, shall:

   a. give written notice to Underwriters of any such **Claim** as soon as practicable but in no event later than sixty (60) days after the end of the **Policy Period** or, if applicable during the **Extended Reporting Period**; or

   b. if the **Insured** receives any summons, arbitration demand, or notice of any legal, quasi-legal, or other adjudicatory or adversarial proceeding, provide immediate notice in writing to Underwriters of such receipt.

Hiscox Inc.

© 2009 Hiscox Inc

MPL P001 CW (06/09)



# Professional Liability Errors and Omissions Insurance
Policy Form

   c. The written notice set forth in Sections VIII.A.1.a. and b. above shall include any and all documents, including every demand, notice, summons or other applicable information received by the **Insured** or by the **Insured's** representatives and should be sent to the representative of Underwriters set forth in Item 6. of the Declarations.

   2. If the **Insured** has the right to either accept or reject the arbitration of any **Claim**, the **Insured** shall exercise such right only with the written consent of Underwriters.

B. **Notice of potential Claims**

If, during the **Policy Period** an **Insured** first becomes aware of a **Wrongful Act** to which this Insurance applies and which might subsequently give rise to a **Claim**, the **Insured** may give written notice to Underwriters of a potential **Claim** during the **Policy Period**. Such notice must include:

1. the identity of the potential claimant;

2. the identity of the person(s) who allegedly committed the **Wrongful Act**;

3. the date of the alleged **Wrongful Act**;

4. specific details of the alleged **Wrongful Act**; and

5. any written notice from the potential claimant describing the **Wrongful Act**.

If this notice is submitted to Underwriters during the **Policy Period**, then any **Claim** that is subsequently made against the **Insured** arising from the **Wrongful Act** about which notice was given to Underwriters shall be deemed for the purpose of this Policy to have been first made during the **Policy Period**. This provision shall not apply to, nor shall the reporting of potential **Claims** be permitted during the **Extended Reporting Period**.

C. The **Insured** shall not, except at its own cost, make any payment, incur any expense, admit any liability, settle any **Claim**, or assume any obligation without the prior written consent of Underwriters.

D. **Acquisition or Creation of Another Entity**

This Policy is issued and the premium computed on the basis of the information submitted to Underwriters as part of the **Application**. If, after the beginning of the Policy Period, the **Named Insured**:

1. acquires substantially all of the assets of another entity;

2. acquires voting securities in another entity or creates another entity, which as a result of such acquisition or creation become a **Subsidiary**; or

3. acquires another entity by merger such that the **Named Insured** is the surviving entity,

Then the coverage provided under this Policy shall apply to such new creation or acquisition; but only with respect to **Wrongful Acts** occurring or allegedly occurring after the acquisition, merger or creation. As a condition for any coverage under this Section VIII.D., if the revenues of the newly created or acquired entity exceed 10% of the current annual revenues of the **Named Insured** as reflected in Question number 6 of **Application**, then coverage for such newly created or acquired entity or asset acquisition will cease ninety (90) days after the effective date of such creation or acquisition unless, within such ninety (90) day period:

   a. the **Named Insured** provides Underwriters with written notice of such creation or acquisition;

   b. the **Named Insured** provides Underwriters with such information in connection therewith as Underwriters may deem necessary;

   c. the **Named Insured** accepts any special terms, conditions, exclusions, or additional premium charge as may be required by the Insurer; and



## Professional Liability Errors and Omissions Insurance
Policy Form

d.   Underwriters, at their sole discretion, agree by written endorsement to provide such coverage.

Nothing contained in Section VIII. D. shall provide coverage for the newly created or acquired entity for **Wrongful Acts** occurring or allegedly occurring prior to the effective date of such creation or acquisition.

E.   **Action against Underwriters**

No action shall be taken against Underwriters unless, as a condition precedent thereto, there shall have been full compliance by the **Insured** with all the terms and conditions of this Policy; nor shall any such action be taken against Underwriters until the amount of the **Insured's** obligation to pay shall have been finally determined either by judgment against the **Insured** after actual trial, or by written agreement of the **Insured**, the claimant and Underwriters. No person or organization shall have any right under this Policy to join Underwriters as a party to any **Claim** against the **Insured** nor shall Underwriters be impleaded by the **Insured** or their legal representatives in any such **Claim**.

F.   **Trade Sanctions**

This Policy does not apply to the extent any trade or economic sanctions, or other laws or regulations prohibit the Underwriters from providing insurance, including, but not limited to, the payment of any claims.

G.   **Other insurance**

This Policy shall be excess insurance over any other valid and collectable insurance available to the **Insured**, whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as a specific excess insurance over the Limit of Liability provided in this Policy.

H.   **Subrogation**

In the event of any payment under this Policy, Underwriters shall be subrogated to the extent of such payment to all of the **Insured's** rights of recovery thereof, and the **Insured** shall execute all papers required and do everything that may be necessary to secure and preserve such rights, including but not limited to the execution of such documents necessary to enable the Insurer to effectively bring suit in Underwriters' name. The **Insured** shall do nothing to prejudice such rights without first obtaining the written consent of Underwriters. Any recovery shall first be paid to Underwriters to the extent of any **Damages** or **Claim Expenses** paid by Underwriters, with the balance paid to the **Insured**. However, no subrogation shall be had against any **Insured**.

I.   **Notice of cancellation**

This Policy may be canceled by the **Named Insured** by giving advance written notice to Underwriters stating when thereafter such cancellation shall be effective. This Policy may also be canceled by Underwriters by mailing to the **Named Insured** by registered, certified or other first class-mail, at the **Named Insured's** address shown in Item 2 of the Declarations, written notice stating when not less than sixty (60) days thereafter [or ten (10) days thereafter when cancellation is due to nonpayment of premium], the cancellation shall be effective.  The mailing of such notice shall be sufficient proof of notice and this Policy shall terminate at the date and hour specified in such notice.  If this Policy shall be canceled by the **Named Insured**, Underwriters shall retain the customary short rate proportion of the premium.  Payment or tender of any unearned premium by Underwriters shall not be a condition precedent to the effectiveness of the cancellation, but such payment shall be made as soon as practicable.

Hiscox Inc.

© 2009 Hiscox Inc



## Professional Liability Errors and Omissions Insurance
Policy Form

J.   **Alteration and assignment**

No change in, modification of, or assignment of interest under this Policy shall be effective unless made by written endorsement to this Policy signed by an authorized representative of Underwriters. Notice to or knowledge received by any representative of Underwriters or by any other person regarding any such change, modification, or assignment shall not be effective to stop Underwriters from asserting any rights under this Policy, unless such is made by written endorsement signed by an authorized representative of Underwriters.

K.   **Warranties and covenants**

The **Insured** warrants, which warranties are a condition for any of Underwriters' obligations hereunder:

1.   that the statements made in the **Application** and in its attachments and any materials submitted therewith are true and are the basis of the Policy and are to be considered as incorporated into and constituting a part of this Policy; and

2.   that the statements made in the **Application** and in its attachments and any materials submitted therewith are their representations; that they shall be deemed material to the acceptance of the risk assumed by Underwriters under the Policy and that this Policy is issued in reliance upon the truth of such representations; and

3.   that in the event the **Application**, including its attachments and any materials submitted therewith, contains misrepresentations which materially affect either the acceptance of the risk assumed by Underwriters under this Policy, this Policy shall be void and of no effect whatsoever.

L.   **Bankruptcy or insolvency**

The bankruptcy or insolvency of the **Insured** shall not relieve Underwriters of any of their obligations under this Policy.

M.   **Territory**

This Policy shall apply worldwide, provided that any action, arbitration, or other proceeding for, in relation to, or arising from the **Claim** is brought within the United States, its territories or possessions, or Canada.

N.   **False or fraudulent claims**

If any **Insured** shall commit fraud in proffering any claim as regards amount or otherwise, this Insurance shall become void as to such **Insured** from the date such fraudulent claim is proffered.

O.   **Titles**

Titles of sections of this Policy are inserted solely for convenience of reference and shall not be deemed to limit, expand or otherwise affect the provisions to which they relate.

Hiscox Inc.

MPL P001 CW (06/09)

© 2009 Hiscox Inc



# HISCOX

## ECONOMIC AND TRADE SANCTIONS POLICYHOLDER NOTICE

Hiscox is committed to complying with the U.S. Department of Treasury Office of Foreign Assets Control (OFAC) requirements. OFAC administers and enforces economic sanctions policy based on Presidential declarations of national emergency. OFAC has identified and listed numerous foreign agents, front organizations, terrorists, and narcotics traffickers as Specially Designated Nationals (SDN's) and Blocked Persons. OFAC has also identified Sanctioned Countries. A list of Specially Designated Nationals, Blocked Persons and Sanctioned Countries may be found on the United States Treasury's web site http://www.treas.gov/offices/enforcement/ofac/.

Economic sanctions prohibit all United States citizens (including corporations and other entities) and permanent resident aliens from engaging in transactions with Specially Designated Nationals, Blocked Persons and Sanctioned Countries. Hiscox may not accept premium from or issue a policy to insure property of or make a claim payment to a Specially Designated National or Blocked Person. Hiscox may not engage in business transactions with a Sanctioned Country.

A Specially Designated National or Blocked Person is any person who is determined as such by the Secretary of Treasury.

A Sanctioned Country is any country that is the subject of trade or economic embargoes imposed by the laws or regulations of the United States.

In accordance with laws and regulations of the United States concerning economic and trade embargoes, this policy may be rendered void from its inception with respect to any term or condition of this policy that violates any laws or regulations of the United States concerning economic and trade embargoes including, but not limited to the following:

(1) Any insured under this Policy, or any person or entity claiming the benefits of such insured, who is or becomes a Specially Designated National or Blocked Person or who is otherwise subject to US economic trade sanctions;

(2) Any claim or suit that is brought in a Sanctioned Country or by a Sanctioned Country government, where any action in connection with such claim or suit is prohibited by US economic or trade sanctions;

(3) Any claim or suit that is brought by any Specially Designated National or Blocked Person or any person or entity who is otherwise subject to US economic or trade sanctions;

(4) Property that is located in a Sanctioned Country or that is owned by, rented to or in the care, custody or control of a Sanctioned Country government, where any activities related to such property are prohibited by US economic or trade sanctions; or

(5) Property that is owned by, rented to or in the care, custody or control of a Specially Designated National or Blocked Person, or any person or entity who is otherwise subject to US economic or trade sanctions.

Please read your Policy carefully and discuss with your broker/agent or insurance professional. You may also visit the US Treasury's website at http://www.treas.gov/offices/enforcement/ofac/.

 **CONFORMITY NOTICE**

(This does not amend, extend, or alter the coverages or any other provisions contained in your policy)

Whenever the symbol "$" is used in this policy, it shall mean United States Dollars (USD).

Endorsement 1

APPLICANT NAME: O48 Realty Inc

E2.1 Professional Services Description                                    Page 1 of 1

In consideration of the premium charged, it is hereby understood and agreed that Item 3. of the
Declarations shall read as follows:

Solely in the performance of services as a real estate agent/broker and/or property manager, of non-
owned properties, for others for a fee.


All other terms and conditions remain unchanged.

Endorsement 2

APPLICANT NAME: O48 Realty Inc

E65.1 Nuclear Incident Exclusion Clause-Liability-Direct (Broad)                     Page 1 of 2

In consideration of the premium charged, it is hereby understood and agreed that this Policy does not apply to and Underwriters shall have no obligation pay any **Damages, Claim Expenses** or **Supplemental Payments** for any **Claim**:

1.  Under any Liability Coverage, to injury, sickness, disease, death or destruction

a)  with respect to which an **Insured** under the Policy is also an **Insured** under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an **Insured** under any such Policy but for its termination upon exhaustion of its limit of liability; or

b)  resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the **Insured** is, or had this Policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

2.  Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

3.  Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if

a)  the nuclear material (1) is at any nuclear facility owned by, or operated by or  behalf of, any insured or (2) has been discharged or dispersed therefrom;

b)  the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an **Insured**; or

c)  the injury, sickness, disease, death or destruction arises out of the furnishing by an **Insured** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

Endorsement 2

APPLICANT NAME: O48 Realty Inc

E65.1 Nuclear Incident Exclusion Clause-Liability-Direct (Broad)          Page 2 of 2

IV.  As used in this endorsement:

"**hazardous properties**" include radioactive, toxic or explosive properties; "**nuclear material**" means source material, special nuclear material or byproduct material; "**source material**", "**special nuclear material**", and "**byproduct material**" have the meanings given them in the Atomic Energy Act 1954 or in any law amendatory thereof; "**spent fuel**" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor; "**waste**" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof; "**nuclear facility**" means

(a)  any nuclear reactor;

(b)  any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste;

(c)  any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

d)  any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste;

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; "**nuclear reactor**" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material, with respect to injury to or destruction of property, the word "**injury**" or "**destruction**" includes all forms of radioactive contamination of property.

It is understood and agreed that, except as specifically provided in the foregoing to the contrary, this clause is subject to the terms, exclusions, conditions and limitations of the Certificate of Insurance to which it is attached.

All other terms and conditions remain unchanged.

Endorsement 3

APPLICANT NAME: O48 Realty Inc

E314.1 Pending and Prior Litigation Exclusion                    Page 1 of 1

In consideration of the premium charged, it is understood and agreed that this Policy does not apply to and Underwriters shall have no obligation to pay any **Damages, Claim Expenses,** or **Supplemental Payments** for any **Claim** alleging, arising out of, based upon or attributable to any **Wrongful Act** or any continuous, repeated or related **Wrongful Acts** as to those alleged in any litigation or administrative or regulatory proceeding that was pending against an **Insured** prior to 08/18/2011.

All other terms and conditions remain unchanged.

Endorsement 4

APPLICANT NAME: O48 Realty Inc

E450.2 Real Estate Agent/Broker and Property Management Services                Page 1 of 6
Endorsement

In consideration of the premium charged, it is understood and agreed that the Policy is amended as follows:

1. In Clause III. DEFINITIONS, paragraph P., "**Professional Services,**" is amended to read as follows:

   P. **Professional Services** means the below listed services performed for others for compensation:

      1. real estate agent and/or real estate broker services, including any services as a notary public performed in conjunction with such real estate agent and/or real estate broker services; or
      2. **Property Management Services**

2. In Clause III. DEFINITIONS, paragraph D., "**Claim,**" is amended to include the following at the end thereof:

   **Claim** shall also include:

      1. an **Open House Claim;**
      2. a **Fair Housing Act Claim;**
      3. a **Failure to Disclose Pollutants Claim;** or
      4. a **Property Management BIPD Claim.**

3. Clause III. DEFINITIONS is amended to include the following at the end thereof:

   RE-A.  **Failure to Disclose Pollutants Claim** means a written demand for **Damages** or for non-monetary relief alleging the failure to disclose the existence of **Pollutants.**

   RE-B.  **Fair Housing Act Claim** means a written demand for **Damages** or for non-monetary relief alleging discrimination in violation of the Fair Housing Act of 1968, 42 USCS § 3601, as amended, including any similar federal, state or local laws.

   RE-C.  **Open House Claim** means a written demand for **Damages** or for non-monetary relief alleging **Property Damage** arising from the showing of a property not owned by the **Insured,** including but not limited to showings at an open house or those where the property is accessed with the use of a "lock box" (or other keyless entry system).

   RE-D.  **Property Management BIPD Claim** means a written demand for **Damages** or for non-monetary relief alleging **Bodily Injury** or **Property Damage** arising from the **Insured's** performance of **Property Management Services** for properties not owned by the **Insured.**

**Endorsement 4**

APPLICANT NAME: O48 Realty Inc

**E450.2 Real Estate Agent/Broker and Property Management Services**                Page 2 of 6
**Endorsement**

RE-E.  **Property Management Services** means the following:

1. development and implementation of management plans and budgets;
2. oversight of physical maintenance of property;
3. solicitation, evaluation and securing of tenants and management of tenant relations, collection of rent and processing evictions;
4. development, implementation and management of loss control and risk management plans for real property;
5. development, procurement, implementation and management of contracts and subcontracts necessary to the daily functioning of real property; or
6. personnel administration and record keeping.

**Property Management Services** shall not mean, and this Policy shall not cover the management or implementation of renovations, construction or reconstruction projects.

4.  In Clause V. EXCLUSIONS, paragraph K. is deleted in its entirety and replaced with the following:

K.  based upon, arising out of, or attributable to **Bodily Injury** or **Property Damage**; provided, however, this exclusion shall not apply to:

a. **Property Damage** resulting from **Open House Claims**; or
b. **Bodily Injury** or **Property Damage** resulting from **Property Management BIPD Claims.**

5.  In Clause V. EXCLUSIONS, paragraph L. is deleted in its entirety and replaced with the following:

L.  based upon or arising out of any actual, alleged or threatened existence, discharge, dispersal, seepage, migration, release or escape of **Pollutants** at any time, including but not limited to any loss, cost or expense arising out of any:

a. request, demand or order that any **Insured** or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the existence, non-existence or effects of **Pollutants**; or
b. **Claim** by or on behalf of a governmental authority or others for **Damages** because of testing for, identifying, detecting, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, communicating information about, responding to, or assessing the existence, non-existence or effects of **Pollutants**; including the failure to perform any of these activities;

provided, however, this exclusion shall not apply to **Failure to Disclose Pollutants Claims.**

EXHIBIT 2

EXHIBIT 2

\*"This stamp is Red
NO FLAT CANCELLATIONS

# NAVIGATORS INSURANCE COMPANY

## THIS IS A CLAIMS MADE INSURANCE POLICY.

THIS POLICY APPLIES ONLY TO THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSURED DURING
THE POLICY PERIOD.  ALL CLAIMS MUST BE REPORTED IN WRITING TO THE COMPANY DURING THE
POLICY PERIOD OR WITHIN 60 DAYS AFTER THE END OF THE POLICY PERIOD.

PLEASE READ THIS POLICY CAREFULLY.

REAL ESTATE PROFESSIONAL ERRORS AND OMISSIONS INSURANCE POLICY

# DECLARATIONS

POLICY NUMBER:    PH15RELB00663IV _____    RENEWAL OF: __NEW_____

1.    NAMED INSURED:    048 REALTY INC

2.    ADDRESS:    5265 SOUTH DURANGO DRIVE, SUITE D
                   LAS VEGAS, NV  89113

3.    POLICY PERIOD:    FROM: 8/18/2015        TO: 8/18/2016
      12:01 A.M. Standard Time at the address of the Named Insured as stated in Number 2 above.

4.    LIMITS OF LIABILITY:    $1,000,000    Each Claim
                             $1,000,000    Annual Aggregate

5.    DEDUCTIBLE: 10,000

6.    PREMIUM: $ 6,760.00    \*POLICY FEE  $350.00                    \*FULLY EARNED

7.    RETROACTIVE DATE: 08/18/2013

8.    FORMS ATTACHED:
      NAV REL NIC PF (02/14); NAV REL 018 (02/14); NAV REL 025 (02/14); NAV-ML-002 (11/12); NAV REL 300 NV
      (02/14)

PROGRAM ADMINISTRATOR:
      BURNS & WILCOX
      30833 NORTHWESTERN HIGHWAY, SUITE 220
      FARMINGTON HILLS, MI  48334

NAV REL DEC (02 14)                    Page 1 of 2

*Navigators*
*Insuring A World in Motion™*

By Acceptance of this policy the Insured agrees that the statements in the Declarations and the Application and any attachments hereto are the Insured's agreements and representations and that this policy embodies all agreements existing between the Insured and the Company or any of its representatives relating to this insurance.

IN WITNESS WHEREOF, we have caused this policy to be signed by our President and Secretary.

[Emily Miner]
Secretary

[Stanley A. Galanski]
President

NAV REL DEC  (02 14)                    Page 2 of 2

This endorsement # 1, effective 08/18/2015 forms a part of Policy #PH15RELB00663IV

issued to 048 Realty Inc..

## GENERAL CHANGE ENDORSEMENT

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

### REAL ESTATE PROFESSIONAL ERRORS AND OMISSIONS INSURANCE POLICY

In consideration of the premium listed below, it is hereby agreed that the policy is amended as follows:

Additional Premium:  $0.00                     Return Premium:  $0.00

This policy is amended where indicated by a ☑ below.

☐ Item 1. **NAMED INSURED** of the Declarations Page is amended to read as follows:

  1. **NAMED INSURED:**

☐ Item 2. **ADDRESS** of the Declarations Page is amended to read as follows:

  2. **ADDRESS:**

☐ Item 3. **POLICY PERIOD** of the Declarations Page is amended to read as follows:

  3. **POLICY PERIOD:**   FROM :                   TO:

☐ Item 4. **LIMITS OF LIABILITY** of the Declarations Page is amended to read as follows:

  4. **LIMITS OF LIABILITY:**

☐ Item 5. **DEDUCTIBLE** of the Declarations Page is amended to read as follows:

  5. **DEDUCTIBLE:**

☐ Item 6. **PREMIUM** of the Declarations Page is amended to read as follows:

  6. **PREMIUM:** $

X   Item **7.** RETROACTIVE DATE of the Declarations Page is amended to read as follows:

   7.  RETROACTIVE DATE: 12/04/2003

☐   Item **8.** FORMS:          The following form(s) are **added** to the policy:

                              The following form(s) are **deleted** from the policy:

**Details Section:** (This section describes changes that are applicable to the selections above)

All other provisions of this policy remain unchanged.

# NAVIGATORS INSURANCE COMPANY

A "Stock" Company
Home Office: One Penn Plaza, New York, NY 10119

## THIS IS A CLAIMS MADE POLICY.
## PLEASE READ THE ENTIRE POLICY CAREFULLY.

## REAL ESTATE PROFESSIONAL ERRORS AND OMISSIONS
## INSURANCE POLICY

Words and phrases that appear in **bold** print have special meanings that are defined in section III., DEFINITIONS.

I.   INSURING AGREEMENTS

A.   Coverage

The **Company** will pay on behalf of the **Insured** all sums in excess of the deductible that the **Insured** becomes legally obligated to pay as **damages** and **claim expenses** as a result of a **claim** first made against the **Insured** during the **policy period** or any applicable **extended reporting period** by reason of an **act or omission**, including **personal injury**, in the performance of **professional services** by the **Insured**, provided that:

1.   No such **act or omission**, or **related act or omission**, was committed prior to the **retroactive date**;

2.   Prior to the inception date of the first policy issued by the **Company**, and continuously renewed, no **Insured** had a basis to believe that any such **act or omission**, or **related act or omission**, might reasonably be expected to be the basis of a **claim**; and

3.   The **claim** must be reported in writing to the **Company** during the **policy period** or within 60 days after the end of the **policy period** unless an **extended reporting period** applies.

Except as provided in Section II. LIMITS OF LIABILITY AND DEDUCTIBLE, paragraph G. Coverage Extension, Item 1 below, **claim expenses** are in addition to the limit of liability.

B.   Defense

The **Company** has the right and duty to defend any **claim** against the **Named Insured** even if any of the allegations of the **claim** are groundless, false or fraudulent. Defense counsel may be designated by the **Company** or, at the **Company's** option, by the **Insured** with the **Company's** written consent and subject to the **Company's** guidelines.

C.   Settlement

The **Company** will have the right to make, with the consent of the **Named Insured**, any settlement of a **claim** under this policy. If the **Named Insured** refuses to consent to a settlement within the policy's applicable limit of liability that is recommended by the

Company and acceptable to the claimant, then the Company's limit of liability shall be a single combined limit of liability for both damages and claim expenses in an amount of total damages for which the claim could have been settled plus the claim expenses incurred up to the time the Company made its recommendation. The Company is not obligated to pay any damages or claim expenses, or to defend or continue to defend such claim, after this single combined limit of liability has been exhausted.

D. Exhaustion of Limits

The Company is not obligated to pay any damages or claim expenses or to defend or continue to defend any claim after the applicable limit of liability for damages has been exhausted by the payment of damages; or after the Company has deposited the applicable limit of liability for damages into a court of competent jurisdiction or tendered the applicable limit of liability to the Named Insured or, if applicable, to the excess insurer(s) of the Named Insured.

II. LIMITS OF LIABILITY AND DEDUCTIBLE A.

Limit of Liability - Each Claim

Subject to paragraph B. below, the Company's limit of liability for damages for each claim first made during the policy period will not exceed the amount shown in Item 4A. In the Declarations for "Each Claim".

B. Limit of Liability - Policy Aggregate

The Company's limit of liability for damages for all claims first made during the policy period will not exceed the aggregate amount shown in Item 4B. In the Declarations as the "Policy Aggregate".

C. Deductible

1. The deductible amount shown in Item 5. In the Declarations is the Named Insured's obligation for each claim and applies to the payment of damages and claim expenses. The deductible will be paid by the Named Insured. The limits of liability set forth in the Declarations are in addition to, and in excess of, the deductible.

2. The Named Insured's obligation to pay the deductible amount stated in Item 5. In the Declarations will be reduced by 50% of the applicable deductible for each claim, but not to exceed a maximum amount of $5,000, provided all of the following conditions are satisfied and evidence of such is provided to the Company when notice of claim is received:

   a. A seller disclosure form was signed by the seller and acknowledged in writing by the buyer prior to closing;

   b. A home warranty policy was purchased or waived in writing by the buyer between the time the residential real property was listed and up to and including 30 days after closing;

   c. An accredited written property inspection report was performed on the property or waived in writing by the buyer prior to closing; and

   d. A state or local board-approved standard sales contract was utilized.

3.  If a claim is resolved by settlement, with the consent of the Named Insured and the Company, within one (1) year following the date that the claim is reported in writing to the Company, the Named Insured will be reimbursed or credited 50% of the applicable deductible, but not to exceed a reimbursement of $5,000 each claim.

If both C. 2 and 3 above apply, only one reduction applies.

D.  **Multiple Insureds, Claims and Claimants**

The limits of liability for damages and claim expenses shown in the Declarations is the maximum amount the Company will pay under this policy for damages and claim expenses, respectively, regardless of the number of Insureds, claims made or claimants. All related claims, whenever made, shall be considered a single claim first made when the earliest of the related claims was first made and first reported when the earliest of the related claims was reported in writing to the Company; provided, however, that the Insured must report all claims as soon as reasonable in accordance with Section V. CONDITIONS, paragraph A.1.

E.  **Multiple Policies**

If this policy and any other policy issued by the Company provide coverage for the same claim, the maximum limit of liability under all the policies combined shall not exceed the highest remaining applicable limit of liability for the claim under any one policy.

F.  **Supplementary Payments**

Supplementary payments are not subject to the deductible and are in addition to the limits of liability.

1.  **Reimbursement of Expenses**

The Company will pay up to $500.00 for loss of earnings to the Insured for each day or part of a day the Insured is in attendance, at the Company's request, at a trial, hearing, mediation or arbitration proceeding involving a claim against the Insured. The maximum amount payable, regardless of the number of trials, hearings, mediations or arbitration proceedings or the number of Insureds shall be $7,500 each claim and $25,000 per policy period.

2.  **Disciplinary Actions**

The Company will reimburse the Insured for reasonable attorneys' fees, costs and expenses incurred resulting from the investigation or defense of a disciplinary action first received by the Insured and reported in writing to the Company during the policy period by reason of an act or omission in the performance of professional services. The maximum amount payable, regardless of the number of disciplinary actions, shall be $25,000 each claim and $50,000 per policy period. The Company shall not be obligated to defend any disciplinary action, or pay any fine, penalty or award resulting from any disciplinary action.

NAV REL NIC PF (02 14)

3.  **Non-Profit Director and Officer Coverage**

The Company will reimburse any principal, partner, shareholder or member of the Named Insured for any Damages and Claims expenses that such Insured becomes legally obligated to pay as a result of a lawsuit first made against such Insured and reported in writing to the Company during the Policy Period or Extended reporting period arising out of such Insured's acts or omissions in his or her capacity as a non-profit organization director or officer, as defined by the Internal Revenue Service, provided that such Insured's service on such non-profit organization has been disclosed to the Company through written notification and which has been accepted and approved in writing by the Company; provided that the maximum amount payable shall under this provision be $15,000 per lawsuit and subject to a $30,000 maximum for all lawsuits during the Policy Period. Coverage shall be excess of all valid and collectible insurance.

4.  **Subpoena Expenses**

The Company will pay expenses incurred while assisting the Insured in responding to a subpoena which the Insured first receives and reports in writing to the Company during the policy period resulting from the performance of professional services by the Insured. The maximum amount payable for subpoena expenses is $25,000 per subpoena; provided, however, that all subpoenas arising out of related acts or omissions shall be deemed to constitute a single subpoena.

5.  **Reimbursement for Reputation Protection Expenses**

The Company will pay up to $5,000 for Reputation Protection Expenses incurred by the Named Insured when responding to a Reputation Event first made and first reported in writing to the Company within 60 days of said Reputation Event during the policy period or Automatic Extended Reporting Period. $5,000 is the maximum the Company will pay regardless of the number of Reputational Event(s).

6.  **Reimbursement for Security Incident**

The Company will reimburse the Named Insured for any security incident response expenses up to a maximum of $25,000 per security incident and $50,000 per policy period. Security incident response expenses are any expenses incurred by the Insured to:

a.  Hire cyber forensic analysts to determine the extent of an actual security breach that has occurred; or

b.  Comply with state or local privacy laws requiring that notification and credit monitoring services are to be provided to individuals when the security, confidentiality, or integrity of their personal information has been compromised.

G.  **Coverage Extensions**

1.  **Discrimination**

The Company will provide a single combined limit of liability for both damages and claim expenses up to $250,000, for damages and claim expenses as a result of all claims reported to the Company during the policy period by reason of a civil lawsuit brought against the Insured, and arising out of professional services

rendered on behalf of the Named Insured, for alleged violations of Title VIII of the Civil Rights Act of 1968, the Fair Housing Amendment Act of 1988 or any similar local, state or federal statute or regulation, including resulting personal injury.

This sub-limit is an aggregate limit of liability that is included within, and not in addition to the Limit of Liability -Policy Aggregate stated in the Declarations.

2. Lock-box

Subject to all other terms and conditions of this policy, this policy applies to Lock-box. Lock-box is not subject to the deductible stated in Section II. Limits and Deductible, item C.

3. Open House

Subject to all other terms and conditions of this policy, this policy applies to Open House.

III. DEFINITIONS

A. Bodily injury means physical injury, sickness or disease sustained by any person including death resulting from any of these at any time. Bodily injury also means mental illness, mental anguish, emotional distress, pain, suffering, or shock sustained by that person, whether or not resulting from physical injury, sickness, disease or death of any person.

B. Claim means a demand for money or services received by the Insured arising out of an act or omission in the performance of professional services. A claim also includes the service of suit or the institution of an arbitration proceeding against the Insured.

C. Claim expenses means:

1. Fees charged by attorneys designated by the Company or designated by the Insured with the Company's prior written consent;

2. All other reasonable and necessary fees, costs and expenses resulting from the investigation, adjustment, negotiation, arbitration, mediation, defense or appeal of a claim, if incurred by the Company or by the Insured with the Company's prior written consent; and

3. Premiums on appeal bonds, attachment bonds or similar bonds; provided, however, the Company is not obligated to apply for or furnish any such bond.

Claim expenses do not include fees, costs or expenses of employees or officers of the Company, or salaries, loss of earnings or other remuneration by or to the Insured.

D. Company means the insurance company named in the Declarations.

E. Construction manager means a person providing the following services in connection with the construction, reconstruction or renovation of real property:

1. Management of facility construction, reconstruction or renovation plans;

2.  Development and management of construction, reconstruction or renovation contracts and subcontracts; or

3.  Development of loss control and risk management plans in connection with the construction, reconstruction or renovation.

F.  **Damages** means any compensatory sum and includes a judgment, award or settlement, provided any settlement is negotiated with the Company's written consent. **Damages** also includes punitive or exemplary amounts, to the extent such amounts are insurable under the applicable state law.

**Damages** do not include:

1.  The return, reduction or restitution of fees, commissions, expenses or costs for professional services performed or to be performed by the **Insured** and injuries that are a consequence of any fees, commissions, expenses or costs charged by the **Insured**;

2.  Fines, penalties, forfeitures or sanctions;

3.  The multiplied portion of any multiplied awards; or

4.  Injunctive or declaratory relief.

G.  **Disciplinary action** means a proceeding before any state licensing board, local real estate board or other governmental body regulating professional conduct, alleging misconduct in providing professional services. **Disciplinary action** does not include criminal charges.

H.  **Extended reporting period** means the period of time after the end of the policy period for reporting claims to the Company that are made against the **Insured** during the applicable extended reporting period by reason of an act or omission, which was committed prior to the end of the policy period and on, or subsequent to, the retroactive date and is otherwise covered by this policy.

I.  **Fungi** means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

J.  **Guaranteed sale listing contract** means a written agreement between the Named Insured and the seller of property in which the Named Insured agrees to purchase the property if it is not sold under the listing agreement within time period specified in the agreement.

K.  **Insured** means:

1.  The Named Insured;

2.  Any past or present partner, principal, shareholder, officer, director, member, employee or independent contractor and their employees, but only for claims arising from professional services performed on behalf of the Named Insured;

3.  The estate, heirs, executors, administrators assigns and legal representatives of the **Insured** in the event of such **Insured**'s death, incapacity, insolvency or bankruptcy, but only for claims arising out of professional services performed by or on behalf of

the Named Insured prior to such Insured's death, incapacity, insolvency or bankruptcy;

4. Any real estate franchise corporation of which the Named Insured is a franchisee, but only as respects to the real estate franchise corporation's liability for acts or omissions committed by an Insured on behalf of the Named Insured;

5. The lawful spouse or a qualifying domestic partner of any present or past partner, principal, shareholder, officer, director, member, employee or independent contractor, but only for liability arising out of professional services performed by such partner, principal, shareholder, officer, director, member employee or independent contractor on behalf of the Named Insured.

L. Lock-box means any claim arising out of the Insured's distribution, maintenance, operation or use of a keyless entry system or similar device used to gain access when showing properties not owned by the Insured.

M. Named Insured means the person or entity specified in Item 1. in the Declarations.

N. Open House means any claim arising out of the showing of a property during an advertised designated time period (up to 3 hours) where multiple potential buyers have the opportunity to view the specified property that is listed for sale by the Insured while in the care, custody or control of the Insured.

O. Personal injury means injury other than bodily injury arising out of one or more of the following offenses by reason of an act or omission by the Insured in the performance of professional services:

1. False arrest, detention or imprisonment;

2. Malicious prosecution;

3. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

4. Oral or written publication, in any manner, of material that:

   a. Slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

   b. Violates a person's right of privacy;

   Except, in either case, oral or written publication in any manner which arises out of advertising, broadcasting or telecasting activities conducted by or on behalf of any Insured.

P. Policy period means the period of time from the effective date shown in Item 3. in the Declarations to the earliest of the date of termination, expiration or cancellation of this policy.

Q. Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

R. **Professional services** means services performed for others in the Insured's capacity as a(n):

1. Real estate agent or broker;

2. Leasing agent or property manager;

3. Appraiser or auctioneer of real property;

4. Real estate consultant or counselor;

5. Short term escrow agent, referral agent or notary public;

6. Member of a real estate accreditation, standards review or similar real estate board or committee, or

7. Expert witness,

Provided that all necessary licenses or certifications are held by the Insured at the time the act or omission giving rise to the claim.

Professional services shall also include services performed for others by the Insured on or via the Insured's internet, e-mail, telecommunications or similar system.

Professional services does not include services as a construction manager.

S. **Property damage** means:

1. Physical injury to tangible property, including all resulting loss of use of that property; or

2. Loss of use of tangible property that is not physically injured.

T. **Property manager** means a person providing the following services in connection with the management of commercial or residential property:

1. Development and implementation of management plans and budget;

2. Oversight of physical maintenance of property;

3. Solicitation, evaluation and securing of tenants and management of tenant relations, collection of rent and processing evictions;

4. Development, implementation and management of loss control and risk management plans for real property;

5. Development, implementation and management of contracts and subcontract (excluding property and liability insurance contracts) necessary to the daily functioning of the property; or

6. Personnel administration and record keeping in connection with a managed property.

Property manager does not include a construction manager.

U.  Referral agent means a real estate agent whose services are limited to referring clients to an Insured for the purposes of commencing a real estate transaction and do not include active solicitation or engagement in the sale of real property.

V.  Related claims means all claims arising out of a single act or omission or related acts or omissions in the performance of professional services.

W.  Related acts or omissions means all acts or omissions that are logically or causally connected by any common fact, circumstance, situation, transaction, event, advice or decision.

X.  Reputation Event means any actual or alleged negligent act, error, or omission that the Named Insured reasonably believes will have an imminent and materially adverse effect on the total revenues of the professional services of the Named Insured that may diminish confidence by its customers based upon unfavorable information made available through television or radio broadcasts.

Y.  Reputation Protection Expenses means any reasonable fees, costs and expenses for consulting services paid to an external public relations firm whose engagement is limited to the adverse effects of negative publicity against the Named Insured caused by a Reputation Event.

Z.  Residential real property means a one to four family dwelling.

AA. Retroactive date means the date shown in Item 7. in the Declarations.

BB. Security incident means the unauthorized access to, or use of data containing private or confidential information in connection with the performance of professional services which results in the violation of any privacy regulation.

CC. Short term escrow agent means an Insured performing the following services in connection with the sale or purchase of real property:

Receiving or holding funds in, or distributing funds from, an escrow or trust account when all such funds are received in the form of United States currency, certified or guaranteed check, or money order, held separately from Insured's funds and where such funds are to be fully distributed within twelve (12) months from date received.

IV. EXCLUSIONS

The Company will not defend or pay any claim:

A.  Based on or arising out of any dishonest, intentionally wrongful, fraudulent, criminal or malicious act or omission by the Insured. The Company will provide the Insured with a defense of such claim unless and until such dishonest, intentionally wrongful, fraudulent, criminal or malicious act or omission has been determined by any final adjudication, finding of fact or admission by the Insured. Such defense will not waive any of the Company's rights under this policy. Upon establishment that the dishonest, intentionally wrongful, fraudulent, criminal or malicious act or omission by the Insured was committed, the Company will have the right to seek recovery of the claim expenses incurred from the Insured found to have committed the acts or omissions;

B. Based on or arising out of bodily injury or property damage except that this exclusion does not apply to claims arising out of lock-box or open house;

C. Based on or arising out of discrimination, humiliation, harassment, or misconduct. Including, but not limited to, claims based on allegations relating to an individuals race, creed, color, age, gender, national origin, religion, disability, marital status or sexual preference; However this exclusion does not apply to any coverage afforded by Section II. Limit of Liability and Deductible, paragraph G.1. Coverage Extensions - Discrimination;

D. Based on or arising out of the insolvency or bankruptcy of the Insured;

E. Based on or arising out of:

   1. Any disputes involving the Insureds fees, commissions or charges;

   2. The conversion, misappropriation, commingling or defalcation of funds or other property;

   3. The gaining of any personal profit or advantage to which the Insured is not legally entitled; or

   4. The inability or failure to pay, collect or safeguard funds held for others, unless the Insured is acting in the capacity of a short term escrow agent;

F. Based on or arising out of the formation, syndication, operation or administration of any property syndication, real estate investment trust or any other form of corporation, general or limited partnership or joint venture formed for the purpose of investing in, buying, selling or maintaining real property;

G. Based on or arising out of the actual or attempted purchase of property by any Insured;

H. Based on or arising out of actual or attempted sale, leasing, appraisal, or property management of property developed, constructed or owned by:

   1. Any Insured;

   2. Any entity in which any Insured has a financial interest;

   3. Any entity which has a financial interest in the Named Insured; or

   4. Any entity which is under the same financial control as the Named Insured, provided that such financial interest or control existed at the time of the act or omission giving rise to the claim.

   This exclusion will not apply to any claim based on or arising out of:

   a. The actual or attempted sale or leasing of real property that the Insured did not construct or develop and in which the combined ownership interest of all Insureds was less than 20% at the time of sale or lease;

   b. The actual or attempted sale of residential real property, owned by an Insured when all of the following conditions are met in connection with such sale:

NAV REL NIC PF (02 14)

      i. A seller disclosure form was signed by the Insured and acknowledged in writing by the buyer prior to closing;

      ii. An accredited written home inspection report was issued or waived in writing by the buyer prior to closing; and,

      iii. A state or local board-approved standard sales contract was utilized;

  c. The actual or attempted sale, leasing or property management of the Insured's residential real property by another Insured who is not the owner of such residential real property;

  d. The actual or attempted sale of real property owned by an Insured if the property was acquired by an Insured under a written guaranteed sale listing contract, and the title is held by an Insured for 12 months or less and the property was listed for sale continuously by an Insured from the date of acquisition to the date of resale; or

  e. The management or leasing of real property in which an Insured's or all Insureds' controlling, legal or beneficial interest at the time property management services were performed is less than 50%;

I. Based on or arising out of any actual or alleged violation of:

  1. The Employee Retirement Income Security Act of 1974;

  2. The Securities Act of 1933;

  3. The Securities Exchange Act of 1934; or

  4. Any state Blue Sky or Securities law;

Or any rules, regulations or amendments issued in relation to such acts, or similar state or federal statutes or regulations, including any claim based upon common law principles of liability;

J. Based on or arising out of any guarantee or promise of future status, performance or valuation in the course of performing professional services by the Insured;

K. Based on or arising out of:

  1. The actual, alleged or threatened emission, discharge, dispersal, seepage, release or escape of pollutants;

  2. Any injury, damage, payments, costs or expense incurred as a result of any testing for, monitoring, removal, containment, treatment, detoxification, neutralization or cleanup of pollutants;

  3. The installation, removal, disposal, handling, use or existence of, exposure to, contact with, or ingestion of lead paint or any substance or matter containing lead paint or the residue of lead paint; or

  4. Contamination or radiation, including but not limited to radon, regardless of cause;

Unless and only to the extent, the claim results from the Insured's failure to disclose the existence of pollutants, asbestos, lead or radon;

L. Based on or arising out of the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any fungi or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to the injury or damage; or any loss cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, fungi or bacteria, by the Insured or by any other person or entity;

M. Based on or arising out of liability assumed by the Insured under any contract or agreement, unless such liability would have attached to the Insured even in the absence of such contract or agreement;

N. By or on behalf of the Insured against any other Insured under this policy unless such claim arises out of professional services rendered by such other Insured in a professional / client relationship with the Insured making the claim;

O. Based on arising out of misappropriation of trade secret or infringement of patent, copyright, trademark, trade dress or any other intellectual property right or unauthorized use of confidential, privileged or non-public material or information;

P. Based on or arising out of the sale of insurance, or the failure to effect or maintain adequate levels of insurance;

Q. Based on or arising out of the alleged notarized certification or acknowledgement by the Insured of a signature on any document that the Insured did not witness being placed on the document;

R. Based on or arising out of any actual or alleged anti-trust law violation or any agreement or conspiracy to restrain trade.

V.  CONDITIONS

A.  Reporting of Claims and Potential Claims:

1. The Insured, as a condition precedent to the obligations of the Company under this policy, will give written notice to the Company as soon as reasonable of any claim made against the Insured.

2. If during the policy period any Insured becomes aware of any act or omission which may reasonably be expected to be the basis of a claim, including but not limited to any notice, advice or threat, whether written or verbal, that any person or entity intends to hold the Insured responsible for any alleged act or omission and gives written notice to the Company with full particulars, including:

a.  The specific act or omission;

b.  The dates and persons involved;

c.  The identity of anticipated or possible claimants;

d. The circumstances by which the Insured first became aware of the possible
claim; and

e. Potential damages or injury.

Then any claim that is subsequently made against the Insured arising out of such act or
omission will be deemed to have been made on the date such written notice was received
by the Company.

3. Notices pursuant to Conditions A.1 and A.2 must be mailed to the Company at the
following address:

Navigators Pro -Claims Department
One Penn Plaza, 32nd Floor
New York, NY 10119
212-613-4300 -Fax
navproclaims@navg.com

B. **Assistance and Cooperation**

1. The Insured will cooperate with the Company and upon the Company's request, attend
hearings, depositions and trials and assist in effecting settlements, securing and giving
evidence, obtaining the attendance of witnesses and in the conduct of suits and
proceedings in connection with a claim.

2. The Insured will assist in the enforcement of any right of contribution or indemnity against
any person or organization who or which may be liable to the Named Insured in
connection with a claim.

3. The Insured will not, except at the Insured's own cost, voluntarily make any payment,
assume or admit any liability or incur any expense without the prior written consent of the
Company. The Company shall have no obligation to pay or
reimburse any person or entity for sums expended to defend any claim otherwise covered
under this Policy prior to written notice of such claim being received by the Company.

C. **Action against the Company**

1. No action may be brought against the Company unless, as a condition precedent
thereto:

a. The Insured has fully complied with all the terms of this policy; and

b. Until the amount of the Insured's obligation to pay has been finally determined either
by judgment against the Insured after actual trial and appeal or by written agreement
of the Insured, the claimant and the Company.

2. Nothing contained in this policy will give any person or organization the right to join
the Company as a defendant or co-defendant or other party in any action against the
Insured to determine the Insured's liability.

NAV REL NIC PF (02 14)

D. **Bankruptcy**

Bankruptcy or insolvency of the Insured or of the Insured's estate will not relieve the Company of any of its obligations hereunder.

E. **Other Insurance**

Such insurance as is provided by this policy shall be excess of any other valid and collectible insurance.

F. **Subrogation**

In the event of any payment for any claim under this policy, the Company will be subrogated in the amount of such payment to all the Insured's rights of recovery against any person or organization. The Insured will execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Insured will do nothing to prejudice such rights.

G. **Changes**

Notice to any agent of the Company or knowledge possessed by any such agent or by any other person will not effect a waiver or a change in any part of this policy, and will not prevent or preclude the Company from asserting or invoking any right or provision of this policy. None of the provisions of this policy may be waived, changed or modified except by a written endorsement issued by the Company to form a part of this policy.

H. **Cancellation/ Nonrenewal**

1. This policy may be cancelled by the Named Insured by returning it to the Company. The Named Insured may also cancel this policy by giving written notice to the Company stating at what future date cancellation is to be effective.

2. The Company may cancel or non-renew this policy by sending written notice to the Named Insured at the address last known to the Company. The Company will provide written notice at least 60 days before cancellation or nonrenewal is to be effective. However, if the Company cancels this policy because the Named Insured has failed to pay a premium when due, this policy may be canceled by the Company by mailing to the Named Insured written notice stating when, not less than 10 days thereafter, such cancellation will be effective. The time of surrender of the policy or the effective date and hour of cancellation stated in the notice will become the end of the policy period. Delivery of such written notice either by the Named Insured or by the Company will be equivalent to mailing.

3. If the Company cancels this policy, the earned premium will be computed pro rata. If the Named Insured cancels this policy, the Company will retain the customary short rate proportion of the premium. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

4. The offering of terms and conditions different from the expiring terms and conditions, including limits of liability, deductible or premium, shall not constitute a refusal to renew or a cancellation of this policy.

I.  **Territory**

This policy applies to an act or omission taking place anywhere in the world provided that any suit is brought against the Insured within the United States of America, its territories or possessions, Puerto Rico or Canada.

J.  **Entire Contract**

By acceptance of this policy the Insured attests that:

1. All of the information and statements provided to the Company by the Insured, including, but not limited to, the application and any supplemental information, are true, accurate and complete and will be deemed to constitute material representations made by the Insured;

2. This policy is issued in reliance upon the Insured's representations;

3. This policy, endorsements thereto, together with the completed and signed application and any and all supplementary information and statements provided by the Insured to the Company, embody all of the agreements existing between the Insured and the Company and shall constitute the entire contract between the Insured and the Company; and

4. Any material misrepresentation or concealment by the Named Insured or the Insured's agent will render the policy null and void and relieve the Company from all liability herein.

K.  **Notices**

Other than claims, any notices required to be given by the Insured will be submitted in writing to the Company or its authorized representative. If mailed, the date of mailing of such notice will be deemed to be the date such notice was given and proof of mailing will be sufficient proof of notice.

L.  **Assignment**

No assignment of interest of the Insured under this policy is valid, unless the Company's written consent is endorsed hereon.

M.  **Liberalization**

If the Company obtains approval for any amended state filing in the jurisdiction in which this policy is issued that would broaden coverage under this policy form NAV REL NIC PF (02 11) without additional premium at any time during the current policy period, the broadened coverage will immediately apply to this policy, except that it will not apply to claims that were first made against the Insured prior to the effective date of such revision.

N.  **Examination of Your Books and Records**

The Company may examine and audit books and records of the Insured, as they relate to this policy, at any time during the policy period and up to three (3) years afterward.

NAV REL NIC PF (02 14)

O. **Reimbursement**

While the Company has no duty to do so, if the Company pays damages and claim expenses:

1. Within the amount of the applicable deductible, or

2. In excess of the applicable Limit of Liability, or

3. Under a reservation of rights to seek reimbursement, and it is determined that the Company is entitled to reimbursement,

All Insureds shall be jointly and severally liable to the Company for such amounts. Upon written demand, the Insured shall repay such amounts to the Company within 30 days. Failure to pay any amount indicated may lead to policy termination.

P. **Named Insured Sole Agent**

The Named Insured will be the sole agent and will act on behalf of all Insureds for the purpose of giving or receiving any notices, any amendments to or cancellation of this policy, for the completing of any applications and the making of any statements, representations and warranties, for the payment of any premium and the receipt of any return premium that may become due under this policy, for the payment of the deductible and the exercising or declining to exercise any right under this policy including the purchase of an extended reporting period under Section VI., paragraph B., C., or D. of this policy.

Q. **Innocent Insured**

If coverage of this policy would not apply because of Section IV. EXCLUSIONS, paragraph A. or because of noncompliance with Section V. CONDITIONS, paragraph A.1., such exclusion or condition will not apply to any Insured who did not commit, participate in, or have knowledge of any of the acts described in Section IV. EXCLUSIONS, paragraph A. and whose conduct did not violate Section V. CONDITIONS, paragraph A.1.

R. **Acquisitions and Mergers, and Other Material Changes**

In the event of any merger, acquisition, or change in a franchise relationship, involving the Named Insured, or other material changes in the Named Insured's operations, there will be no coverage under this policy for any merger, acquisition, or material change until the change has been accepted in writing by the Company and the appropriate premium has been determined by the Company. Premium will be calculated in accordance with the Company's rules, rates, rating plans, premiums, and minimum premiums applicable to the insurance afforded herein.

VI. **EXTENDED REPORTING PERIODS**

A. **Automatic Extended Reporting Period**

If this policy is cancelled or non-renewed by either the Company or by the Named Insured, the Company will provide to the Named Insured an automatic, non-cancelable extended reporting period starting at the termination of the policy period if the Named Insured has not obtained another policy of real estate professional errors and omissions

NAV REL NIC PF (02 14)                                                                        Page 16 of 18

insurance within sixty (60) days of the termination of the policy period. This automatic extended reporting period will terminate after sixty (60) days.

B. Optional Extended Reporting Period

1. If this policy is cancelled or non-renewed by either the Company or by the Named Insured, then the Named Insured will have the right to purchase an optional extended reporting period of one, two or three years. Such right must be exercised by the Named Insured within sixty (60) days of the termination of the policy period by providing:

    a. Written notice to the Company; and

    b. With the written notice, the amount of additional premium described below.

2. The non-refundable additional premium for the optional extended reporting period shall be:

    a. For a one (1) year extended reporting period, 100% of the annual premium for the policy; or

    b. For a two (2) year extended reporting period, 135% of the annual premium for the policy; or

    c. For a three (3) year extended reporting period, 150% of the annual premium for the policy.

3. The first sixty (60) days of the optional extended reporting period, if it is purchased, shall run concurrently with the automatic extended reporting period.

C. Death or Disability Reporting Period Option

In the event that a designated principal, partner or owner of the Named Insured dies or becomes permanently and totally disabled during the policy period, and the Named Insured cancels or fails to renew this policy due to dissolution of the firm an unlimited extended reporting period will be granted at no additional premium, provided that:

1. Within ninety (90) days of the death or permanent and total disability, the Named Insured or the estate of the designated principal, partner or owner of the Named Insured requests the unlimited extended reporting period; and

2. The estate of the designated principal, partner or owner of the Named Insured furnishes written evidence and proof of the designated principal, partner or owner of the Named Insured's death; or

3. The designated principal, partner or owner of the Named Insured provides evidence and proof of the permanent and total disability, including the date of the actual disability and written certification by the attending physician.

D. Retirement Reporting Period Option

1. If a designated principal, partner or owner of the Named Insured reaches the age of 65, and having been continuously insured by the Company on a claims-made basis for a minimum of 5 years, the designated principal, partner or owner of the Named

Insured retires and the Named Insured cancels or fails to renew this policy due to dissolution of the firm, an unlimited extended reporting period will be granted at no additional premium; or

2.  If a designated principal, partner or owner of the Named Insured retires from active business during the policy period and the Named Insured cancels or fails to renew this policy due to dissolution of the firm, an unlimited extended reporting period can be purchased for a non-refundable additional premium of 160% of annual premium.

Such right must be exercised by the Named Insured within sixty (60) days of the retirement by providing:

a.  Written notice to the Company; and

b.  With the written notice, if applicable, the amount of additional premium described in Item D.2. above.

E.  **Extended Reporting Period Limits of Liability**

The limit of liability of the Company for all claims reported during any extended reporting period will be part of and not in addition to the limit of liability, for the policy period set forth in item 4. in the Declarations.

F.  **Elimination of Right to Any Extended Reporting Period**

There is no right to any extended reporting period if the Company cancels or refuses to renew this policy due to:

1.  Nonpayment of amounts due under this policy;

2.  Noncompliance by any Insured with any of the terms and conditions of this policy;

3.  Any material misrepresentation or omission in the application or the supplementary information and statements provided by the Named Insured for this policy.

G.  **Extended Reporting Period – Not a New Policy**

The extended reporting period will not be construed to be a new policy and any claim submitted during such period will otherwise be governed by this policy.

# OFAC ENDORSEMENT

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### U.S. ECONOMIC AND TRADE SANCTIONS LIMITATIONS CLAUSE

No insurer shall be deemed to provide cover and no insurer shall be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose that insurer to any sanction, prohibition or restriction under the trade or economic sanctions, laws or regulations of the United States of America.

The United States of America trade or economic sanctions, laws or regulations shall include, but not be limited to, those sanctions administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control (OFAC).

All other terms, conditions and exclusions of this Policy remain unchanged.

This endorsement # __A_____ , effective ___8/ 18/ 2015____ forms a part of Policy # __PH15RELB00663IV___

issued to    048 REALTY INC

# FUNGI AND BACTERIA SUB-LIMIT

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

## REAL ESTATE PROFESSIONAL ERRORS AND OMISSIONS INSURANCE POLICY

In consideration of the premium charged, it is agreed the policy is amended as follows: Item 4.

In the Declarations, Limits of Liability is amended to add the following:

  Limit of Liability - Fung i and Bacteria $ 100,000_____ .

Section II. LIMITS OF LIABILITY AND DEDUCTIBLE, is amended to include the following:

  Lim it of Lia bility –Fung i and Bacteria

  The Limit of Liability – Fung i and Bacteria"as set forth above is a single combined sub-limit of liability for both dam ages and cla im s expenses and is included within, and not in addition to, Limit of Liability - Policy Aggregate"stated in the Declarations

Section IV. EXCLUSIONS, paragraph L. is deleted in its entirety and replaced with the following:

  L.  Based on or arising out of the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any fung i or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to the injury or damage; or any loss cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, fung i or bacteria, by the Insured or by any other person or entity, unless and only to the extent that, the cla im results from the Insured 's failure to disclose the existence or presence of fung i or bacteria.

All other provisions of this policy remain unchanged.

This endorsement # B_____ , effective \_\_8/18/2015\_\_\_ forms a part of Policy # \_\_PH15RELB00663IV\_\_\_\_

issued to  048 REALTY INC

## CLAIMS EXPENSES INSIDE THE LIMIT OF LIABILITY ENDORSEMENT

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

### REAL ESTATE PROFESSIONAL ERRORS AND OMISSIONS INSURANCE POLICY

### NOTICE: CLAIMS EXPENSES ARE WITHIN AND REDUCE THE LIMIT OF LIABILITY.

In consideration of the premium charged, it is agreed that Section I. INSURING AGREEMENTS, paragraph A. is deleted in their entirety and replaced as follows:

I.   INSURING AGREEMENTS

A.  Coverage

The Company will pay on behalf of the Insured all sums in excess of the deductible that the Insured becomes legally obligated to pay as damages and claim expenses as a result of a claim first made against the Insured during the policy period or any applicable extended reporting period by reason of an act or omission, including personal injury, in the performance of professional services by the Insured, provided that:

1.  No such act or omission, or related act or omission, was committed prior to the retroactive date;

2.  Prior to the inception date of the first policy issued by the Company, and continuously renewed, no Insured had a basis to believe that any such act or omission, or related act or omission, might reasonably be expected to be the basis of a claim; and

3.  The claim must be reported in writing to the Company during the policy period or within 60 days after the end of the policy period unless an extended reporting period applies.

It is further agreed that Section I. INSURING AGREEMENTS, paragraph C. and D. are deleted in their entirety and replaced as follows:

C.  Settlement

The Company will have the right to make, with the consent of the Named Insured, any settlement of a claim under this policy.  If the Named Insured refuses to consent to a settlement within the policy's applicable limit of liability that is recommended by the Company and acceptable to the claimant, then the Company's limit of liability under this policy will be reduced to the amount of damages for which

NAV REL 025 (02 14)                                                                                         Page 1 of 2

the claim could have been settled plus all claims expenses incurred up to the time the Company made its recommendation.

D.   Exhaustion of Limits

The Company is not obligated to pay any damages or claim expenses or to defend or continue to defend any claim after the applicable limit of liability has been exhausted, or after the Company has deposited the remaining limit of liability into a court of competent jurisdiction or tendered the remaining limit of liability to the Named Insured or, if applicable, to the excess insurer(s) of the Named Insured.

It is further agreed that Section II., LIMITS OF LIABILITY AND DEDUCTIBLE, paragraphs A. and B. are deleted in their entirety and replaced as follows:

A.   Limit of Liability - Each claim

Subject to paragraph B. below, the Company's limit of liability for damages and claim expenses for each claim first made and reported in writing to the Company during the policy period will not exceed the amount shown in Item 4A. in the Declarations for "Limit of Liability - Each Claim."

B.   Limit of Liability - Policy Aggregate

The Company's limit of liability for damages and claim expenses for all claims first made and reported in writing to the Company during the policy period will not exceed the aggregate amount shown in Item 4B. in the Declarations as the "Limit of Liability - Policy Aggregate."

All other provisions of this policy remain unchanged.

NAV REL 025 (02 14)

## To Our Valued
## Real Estate Clients



Our Real Estate Program
now offers expanded risk
management services
through our new risk hotline.

In addition, qualified legal
counsel can assist you with
questions you may have
regarding real estate
practices and procedures,
document review and
engagement letter wording.

Contact:

Fred Trester

877-220-9282

from the firm of

Manning, Marder,

Kass, Ellord and Ramirez LLP

For more information please contact your agent.

## To Our Valued Real Estate Clients



Our Real Estate Program now offers expanded risk management services through our new risk hotline.

In addition, qualified legal counsel can assist you with questions you may have regarding real estate practices and procedures, document review and engagement letter wording.

Contact:
Fred Trester
877-220-9282

from the firm of
Manning, Marder,
Kass, Ellord and Ramirez LLP

For more information please contact your agent.

This endorsement #  C    , effective 8/ 18/ 2015         forms a part of Policy #  PH15RELB00663IV

issued to  048 REALTY INC

# NEVADA AMENDATORY ENDORSEMENT

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

### REAL ESTATE PROFESSIONAL ERRORS AND OMISSIONS INSURANCE POLICY

Section V. CONDITIONS, paragraph H. Cancellation/ Nonrenewal is deleted in its entirety and replaced with the following:

H. Cancellation/ Nonrenewal

   1. Cancellation

      a. The Named Insured shown in the Declarations may cancel this policy by mailing to the Company advance written notice of cancellation.

      b. The Company may cancel this policy by mailing or delivering to the Named Insured written notice of cancellation at least:

         i.   10 days before the effective date of cancellation if the Company cancels for nonpayment of premium; or

         ii.  30 days before the effective date of cancellation if the Company cancels for any other reason.

      c. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

      d. If this policy is cancelled, the Company will send the Named Insured any premium refund due. If the Company cancels, the refund will be pro rata. If the Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if the Company has not made or offered a refund.

      e. If notice is mailed, proof of mailing will be sufficient proof of notice.

      f. If this policy has been in effect for 70 days or more, or if this policy is a renewal of a policy the Company issued, the Company may cancel only for one or more of the following reasons:

         i.   Nonpayment of premium;

         ii.  Conviction of the Named Insured of a crime arising out of acts increasing the hazard insured against;

         iii. Discovery of fraud or material misrepresentation in obtaining the policy or in presenting Claim thereunder;

         iv.  Discovery of an act or omission or a violation of any condition of the policy which occurred after the first effective date of the current policy, and substantially and materially increases the hazard insured against;

NAV REL 300 NV (02 14)                                                                                      Page 1 of 2

   v.  A material change in the nature or extent of the risk, occurring after the first effective date of the current policy, which causes the risk of loss to be substantially and materially increased beyond that contemplated at the time the policy was issued or last renewed;

   vi.  A determination by the commissioner that continuation of the Company's present volume of premiums would jeopardize the Company's solvency or be hazardous to the interests of the Company's policyholders, creditors or the public;

   vii.  A determination by the commissioner that the continuation of the policy would violate, or place the Company in violation of, any provision of the code.

g.  If this policy is written for a term longer than one year, the Company may cancel for any reason at an anniversary, by mailing or delivering written notice of cancellation to the Named Insured at the last mailing address known to the Company at least 60 days before the anniversary date.

2. Nonrenewal

a.  If the Company elects not to renew this policy, the Company will mail or deliver to the Named Insured shown in the Declarations a notice of intention not to renew at least 60 days before the agreed expiration date.

b.  If notice is mailed, proof of mailing will be sufficient proof of notice. c.

The Company need not provide this notice if:

   i.  The Named Insured has accepted replacement coverage.

   ii.  The Named Insured has requested or agreed to nonrenewal; or

   iii.  This policy is expressly designated as nonrenewable.

3. Notices

a.  Notice of cancellation or nonrenewal in accordance will be mailed, first class or certified, or delivered to the Named Insured at the last mailing address known to the Company and will state the reason for cancellation or nonrenewal.

b.  The Company will also provide a copy of the notice of cancellation, for both policies in effect less than 70 days and policies in effect 70 days or more, to the agent who wrote the policy.

All other terms and conditions of this policy remain unchanged.